UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

NANCY ANN HAMILTON,

      Plaintiff,

     v.                                    19-CV-770 (JLS)

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

## DECISION AND ORDER

Plaintiff Nancy Ann Hamilton brings this action under the Social Security Act, seeking review of a determination by the Commissioner of Social Security (the "Commissioner") that she was not disabled. Dkt. 1. Hamilton moved for judgment on the pleadings. Dkt. 9. The Commissioner responded and cross-moved for judgment on the pleadings. Dkt. 10. Hamilton replied. Dkt. 11.

For the below reasons, this Court denies Hamilton's motion and grants the Commissioner's cross-motion.

## PROCEDURAL HISTORY

On September 11, 2015, Hamilton applied under Title XVI for supplemental security income. Dkt. 9-1, at 2. She alleged she had been disabled since March 1, 2014. Dkt. 9-1, at 2.

The Commissioner denied Hamilton's application on November 18, 2015. Dkt. 6, at 15.[1] On January 12, 2016, Hamilton filed a written request for a hearing before an administrative law judge ("ALJ").  Tr. 105.  The ALJ held a hearing on February 1, 2018.  Tr. 15.  The ALJ issued an unfavorable decision on April 4, 2018. Tr. 28.  Hamilton requested review of the ALJ's decision on April 13, 2018, and the Appeals Council denied her request on April 12, 2019.  Tr. 1.  Hamilton commenced this action on June 11, 2019.  Dkt. 1.

## LEGAL STANDARDS

## I.   DISTRICT COURT REVIEW

The scope of review of a disability determination involves two levels of inquiry.  *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  First, the Court must "decide whether [the Commissioner] applied the correct legal principles in making the determination."  *Id.*  The Court's review for legal error ensures "the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes" of the Social Security Act.  *See Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Second, the Court "decide[s] whether the determination is supported by 'substantial evidence.'"  *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a

---

[1] All further references to Dkt. 6 are denoted Tr. ___ .  Page numbers for documents contained in Dkt. 6 correspond to the pagination located in the lower right corner of each page.

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations
and citation omitted).  The Court does not "determine *de novo* whether [the
claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal
quotations and citation omitted).  But "the deferential standard of review for
substantial evidence does not apply to the Commissioner's conclusions of law."
*Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).  Indeed, if there is "a
reasonable basis for doubt whether the ALJ applied correct legal principles,"
applying the substantial evidence standard to uphold a finding that the claimant
was not disabled "creates an unacceptable risk that a claimant will be deprived of
the right to have her disability determination made according to the correct legal
principles." *Johnson*, 817 F.2d at 986.

## II.    DISABILITY DETERMINATION

ALJs follow a five-step evaluation process to determine if a claimant is
disabled.  *See* 20 C.F.R. § 416.920(a)(4).  At the first step, the ALJ determines
whether the claimant currently is engaged in substantial gainful employment.  *Id.*
§ 416.920(a)(4)(i).  If so, the claimant is not disabled.  *Id.*  If not, the ALJ proceeds to
step two.  *Id.* § 416.920(a)(4).

At step two, the ALJ decides whether the claimant suffers from any severe
impairments.  *Id.* § 416.920(a)(4)(ii).  If there are no severe impairments, the
claimant is not disabled.  *Id.*  If there are any severe impairments, the ALJ proceeds
to step three.  *Id.* § 416.920(a)(4).

3

At step three, the ALJ determines whether any severe impairment or combination of impairments meets or equals an impairment listed in the regulations. *Id.* § 416.920(a)(4)(iii). If the claimant's severe impairment or combination of impairments meets or equals an impairment listed in the regulations and meets the duration requirement, the claimant is disabled. *Id.* § 416.920(a)(4)(iii).

But if the ALJ finds that no severe impairment or combination of impairments meets or equals an impairment in the regulations, the ALJ proceeds to calculate the claimant's residual functional capacity ("RFC"). *Id.* § 416.920(a)(4)(iv); *id.* §§ 416.920(d)-(e). The RFC is a holistic assessment that addresses the claimant's medical impairments—both severe and non-severe—and evaluates the claimant's ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for his or her collective impairments. *See id.* § 416.945.

The ALJ then proceeds to step four and determines, using the claimant's RFC, whether the claimant can perform past relevant work. *Id.* § 416.920(e). If the claimant can perform past relevant work, she is not disabled, and the analysis ends. *Id.* § 416.920(f). But if the claimant cannot perform past relevant work, the ALJ proceeds to step five. *Id.* § 416.920(a)(4)(iv); *id.* § 416.920(f).

In the fifth and final step, the Commissioner must present evidence showing the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See id.* § 416.920(a)(4)(v); *id.* § 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Specifically, the

4

Commissioner must prove the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (internal quotations and citation omitted).

## DISCUSSION

The ALJ proceeded through the five-step evaluation in Hamilton's case. At step one, she found that Hamilton had not engaged in substantial gainful activity since September 11, 2015. Tr. 17. At step two, she found that Hamilton had the following severe impairments: chronic obstructive pulmonary disease (COPD), degenerative disc disease of the lumbar spine, bilateral knee pain, and obesity. Tr. 17. At step three, the ALJ found that Hamilton does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.[2] Tr. 20. At step four, she calculated Hamilton's RFC and found that she could perform:

> [L]ight work as defined in 20 C.F.R. 416.967(b) except she: requires a cane for ambulation; requires changing positions from sitting to standing during the 8-hour workday while remaining on task (specifically, she can sit for 15 minutes before having to shift positions and can stand for up to 15 minutes before she needs to sit, all while remaining on task); can occasionally push and pull; can occasionally climb ramps and stairs; can occasionally balance on level surfaces; can occasionally stoop and kneel; can never crouching or crawl; can occasionally reach overhead; can never tolerate exposure to unprotected heights, moving machinery, and moving mechanical parts; must avoid exposure to odors, fumes, dusts, gasses, and poor ventilation; can not perform a job requiring driving motor vehicles or other machinery; is able to follow and understand simple directions and instructions, perform simple tasks, maintain attention and concentration, and make

---

[2] *See* 20 C.F.R. §§ 416.920(d), 416.925, 416.926.

> simple work-related decisions; and can perform work that involves
> frequent contact and interaction with supervisors and occasional contact
> and interaction with co-workers and the public.

Tr. 21. After considering the evidence, the ALJ found that Hamilton's medically

determinable impairments "could reasonably be expected to cause the alleged

symptoms," but that Hamilton's statements concerning the intensity, persistence,

and limiting effects of these symptoms were "not entirely consistent with the

medical evidence and other evidence in the record." Tr. 22. The ALJ determined

that Hamilton does not have past relevant work. Tr. 27. After considering

vocational expert testimony, at step five, the ALJ determined that Hamilton could

perform the requirements of occupations like "Shipping and receiving weigher"

(74,460 jobs nationally), "Final assembler" (251,670 jobs nationally), "Stuffer"

(387,560 jobs nationally), and "Envelop addressor" (68,660 jobs nationally). Tr. 27-

28. Thus, the ALJ concluded that Hamilton has not been under a disability under

the Act since September 11, 2015. Tr. 28.

Hamilton argues that the ALJ's decision is not supported by substantial

evidence. Dkt. 9-1, at 1. Specifically, she argues that the ALJ relied solely on her

own lay opinion to create a highly specific RFC. Dkt. 9-1, at 9. The Commissioner

argues that the ALJ properly analyzed the medical evidence in determining

Hamilton's RFC, and substantial evidence supported the ALJ's RFC. Dkt. 10-1, at

17, 23.

## A. DETERMINING AN RFC

An RFC is defined as "the most work a claimant can still do despite limitations from an impairment and/or its related symptoms." *See Farnham v. Astrue*, 832 F. Supp. 2d 243, 263 (W.D.N.Y. 2011) (citing 20 C.F.R. § 416.945). In providing an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms,[3] including pain and descriptions of other limitations. *See, e.g., Mark H. v. Comm'r of Soc. Sec.*, No. 5:18-CV-1347 (ATB), 2020 WL 1434115, at *3 (N.D.N.Y. Mar. 23, 2020) (citing 20 C.F.R. § 416.945). The RFC assessment should also include a narrative discussion, describing how the evidence supports each conclusion, citing specific medical facts—such as laboratory findings—and non-medical evidence—like daily activities and observations. *Trail v. Astrue*, No. 09-CV-1120 (DNH/GHL), 2010 WL 3825629, at *6 (N.D.N.Y. Aug. 17, 2010) (citations omitted).

An ALJ assessing a disability claim must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v.*

---

[3] When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ assesses the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) other treatment received to relieve pain or other symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

*Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ is not a medical professional and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *See Smith v. Comm'r of Soc. Sec.*, 337 F. Supp. 3d 216, 222 (W.D.N.Y. 2018) (quoting *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018)). But the ALJ's conclusion does not have to "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id.* (citing *Matta*, 508 F. App'x at 56). A claimant's testimony may be "acceptable evidence to support the inclusion of a limitation in an RFC determination." *Threatt v. Comm'r of Soc. Sec.*, No. 19-cv-00025(JJM), 2020 WL 4390695, at *5 (W.D.N.Y. July 31, 2020) (quoting *Yargeau v. Berryhill*, No. 1:16-cv-00706-MAT, 2018 WL 1335388, at *3 (W.D.N.Y. Mar. 15, 2018)). It is the claimant's burden to prove a more restrictive RFC than the RFC assessed by the ALJ. *See Beaman v. Comm'r of Soc. Sec.*, No. 1:18-CV-01344 EAW, 2020 WL 473618, at *6 (W.D.N.Y. Jan. 28, 2020) (citing *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018)). Thus, where an ALJ's RFC assessment is more restrictive than the medical opinions contained in the record, "it is generally not a basis for remand." *See Baker o/b/o Baker v. Berryhill*, No. 1:15-CV-00943-MAT, 2018 WL 1173782, at *2 (W.D.N.Y. Mar. 6, 2018) (citing *Castle v. Colvin*, No. 1:15-CV-0013(MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017)).

## B. SUBSTANTIAL EVIDENCE SUPPORTS THE RFC FINDING

In this case, the ALJ relied in part on consultative examiner Dr. Hongbiao Liu's opinion in assessing Hamilton's physical RFC. Tr. 22-23, 26. Dr. Liu conducted a physical examination of Hamilton on November 3, 2015. Tr. 295-98.

8

At that examination, Hamilton reported suffering from hypertension, COPD, arthritis, and whole-body pain, particularly in the low back and hip. Tr. 295. Hamilton reported she received physical therapy and injections to treat her pain for her knees and back. Tr. 295. In terms of daily living, Hamilton stated she cooks twice a week, cleans the house and does laundry occasionally, and showers, bathes, and dresses occasionally. Tr. 296.

> Upon a physical examination, Dr. Liu observed:
>
> The claimant appeared to be in no acute distress. Gait normal. Cannot walk on heels, but could walk on toes with moderate difficulty because of low back pain. Squat 60% because of low back pain. Stance normal. Used no assistive devices. Needed no help changing for exam or getting on and off exam table. Able to rise from chair without difficulty.

Tr. 296. Hamilton's cervical spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. Tr. 297. Hamilton's thoracic spine showed no scoliosis, kyphosis, or abnormality. Tr. 297. Her lower lumbar spine flexion and extension was limited to seventy-five degrees, and the lateral flexion and rotation left to right were limited twenty degrees. Tr. 297. Hamilton's joints were stable and nontender. Tr. 297. Dr. Liu noted that straight leg tests were positive bilaterally at forty-five degrees and that Hamilton had full range of motion in her shoulders, elbows, forearms, and wrists bilaterally, as well as in her hips, knees, and ankles bilaterally. Tr. 297. An x-ray showed a mild narrowing of the L2-L3 through the L4-5 disc spaces and Grade I spondylolisthesis of L5 over S1. Tr. 299. Based on the examination, Dr. Liu opined that Hamilton's prognosis was

"stable" and she had "mild to moderate limitation for prolonged walking, bending, and kneeling." Tr. 298.

The ALJ gave this opinion "limited weight" because it was a one-time examination, the opinion did not give the functional limitations in vocationally relevant terms, and the examination was performed over two years before the ALJ's decision. Tr. 26.

Hamilton argues that because the ALJ afforded "limited weight" to Dr. Liu's opinion, the ALJ necessarily and impermissibly relied on her own lay opinion in the RFC assessment.[4]  This Court disagrees.  *See Beckles v. Comm'r of Soc. Sec.*, No. 18-CV-321P, 2019 WL 4140936, at *4 (W.D.N.Y. Aug. 30, 2019) (rejecting the argument that the RFC was not supported by any medical opinion evidence where the ALJ only gave "partial" weight to the consultative medical opinion, which was the sole medical opinion in the record regarding the claimant's physical limitations).

First, this Court does not agree with the argument that the ALJ "rejected" Dr. Liu's opinion—and therefore "had no medical opinion to rely on" to support the RFC.  Dkt. 9-1, at 11-12.  The ALJ gave Dr. Liu's opinion "limited weight."  Tr. 26. This is not a complete rejection of the opinion.  Rather, the ALJ's RFC determination incorporated the "mild to moderate" limitations for prolonged walking, bending, and kneeling (Tr. 298), which is demonstrated by the ALJ's

---

[4] Hamilton's arguments regarding the ALJ's RFC determination chiefly concern her physical limitations.  Dkt. 9-1, at 9-14.  Because Hamilton fails to allege that the ALJ erred in determining her mental RFC, the Court declines to review that portion of the RFC.

10

limiting Hamilton to light work with additional restrictions relevant to these activities. *See Cook v. Comm'r*, No. 18-CV-0726MWP, 2020 WL 1139909, at *3 (W.D.N.Y. Mar. 9, 2020) (collecting cases); *see also Gerry v. Berryhill*, No. 17-CV-7371 (JS), 2019 WL 955157, at *3 (E.D.N.Y. Feb. 26, 2019) ("Courts within this Circuit have held that opinions of similar 'mild to moderate limitations' support RFC findings that claimants are capable of 'light work.'") (collecting cases).  The ALJ does not "reject" an opinion completely when the opinion is given less than controlling weight and where "it is evident that the ALJ's RFC determination incorporates limitations contained in that opinion." *Cook*, 2020 WL 1139909, at *4 (collecting cases); *see Beckles*, 2019 WL 4140936, at *5 (collecting cases).[5]

As in *Beckles*, this case involves only one medical opinion in the record related to Hamilton's physical limitations—and one that did not receive more than "partial" or "limited" weight. *Beckles*, 2019 WL 4140936, at *3-4.  But that does not mean the ALJ necessarily relied on her own lay opinion to craft the RFC. Dr. Liu's opinion was supported by his physical examination of Hamilton and was consistent with the medical evidence in the record—notably, the ALJ did not cite inconsistency with the medical evidence of record as a reason for discounting the opinion. Tr. 26.

_____

[5] As the Court in *Beckles* observed, "irrespective of the terminology used by the ALJ, whether it be 'little weight,' 'some weight,' or 'no weight,' the relevant inquiry is whether the ALJ incorporates or accounts for any of the limitations assessed by the medical professional in the RFC, as opposed to basing the RFC upon his or her own lay interpretation of the medical evidence." 2019 WL 4140936, at *4 n.5 (collecting cases).

As the ALJ discussed in detail in her decision, Dr. Liu's opinion supports, rather than conflicts with, the RFC finding.  In her discussion of the RFC, the ALJ provided a thorough "narrative discussion" of the evidence—citing to both specific medical facts and non-medical evidence—and how it supported the ALJ's conclusion that Hamilton's statements regarding her symptoms are not entirely consistent with the medical evidence and other evidence. *Trail*, 2010 WL 3825629, at *6.

The ALJ thoroughly reviewed Hamilton's medical history and record in her decision.  For instance, the ALJ discussed Hamilton's pain management visits with Dr. Gautam Arora, MD, both before and after Hamilton's consultative examination with Dr. Liu.  Tr. 22-23.  The ALJ noted Hamilton's reported pain and the September and October 2015 examinations of Dr. Arora showing some tenderness, some decrease in range of motion, positive straight leg raise testing on the left, and decreased sensation in the right leg and foot. Tr. 22, 280-88.  Dr. Arora observed gait as normal and leaning to right side simultaneously.  Tr. 281.  Hamilton received an epidural steroid injection.  Tr. 282-84.  The ALJ continued discussion of Dr. Arora's pain management treatment notes for the period from November 2015 to August 2016.  Tr. 23.  Hamilton reported pain aggravation with activity, housework, weather, walking, and lifting.  Tr. 303-351.  The ALJ notes similar examination observations as the prior visits, as well as additional epidural steroid injections in December 2015, May 2016, and June 2016.  Tr. 23, 303-351.  These are the very treatment notes and observations that Hamilton cites as "objective findings" in her papers.  Dkt. 9-1, at 13.

The ALJ similarly reviewed Hamilton's primary care treatment and emergency room visits in detail. Tr. 23-25. In March 2015, Hamilton went to the emergency room complaining of low back pain. Tr. 497. The musculoskeletal exam revealed normal range of motion and normal strength; notes at that time stated negative X-rays for fracture dislocation and lytic lesions and mild degenerative joint disease. Tr. 501. The ALJ notes that she was discontinued from pain management medication from Dr. Arora for violating her pain management contract. Tr. 24, 447. In August 2016, Hamilton visited the emergency room for opiate withdrawal and complained of withdrawal symptoms to her primary care provider in a visit shortly after. Tr. 447-53, 482. At both these hospital and primary care visits, Hamilton was advised to follow-up with an orthopedist and pulmonologist, as well as find a new pain management physician—the ALJ noted that attempts to develop the record in regard to these consultations and follow-ups were fruitless. Tr. 24-25. The ALJ also noted the lack of diagnostic testing records and imaging—apart from the X-ray from Dr. Liu—that would typically accompany surgery consultations and referrals. Tr. 24-25.

Having reviewed the medical evidence, the Court concludes that the ALJ did not err by giving limited weight to Dr. Liu's opinion and largely incorporating that opinion in Hamilton's RFC determination. Nor did the ALJ err in including in her RFC finding limitations beyond those identified by Dr. Liu, based on subsequent medical and nonmedical evidence. *Rodriguez v. Comm'r of Soc. Sec.*, No. 1:19-CV-00179 EAW, 2020 WL 1316435, at *4-5 (W.D.N.Y. Mar. 20, 2020); *Beckles*, 2019 WL

4140936, at *5.  It is "the ALJ's duty to formulate the RFC after evaluating the opinion evidence, treatment records, and the testimony of the claimant." *Davis v. Colvin*, No. 15-CV-6695P, 2017 WL 745866, at *11 (W.D.N.Y. Feb. 27, 2017).  In evaluating a claimant's RFC for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account—but the ALJ may "exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal citations omitted).  Here, the Court rejects the argument that the ALJ failed to explain how she concluded Hamilton was capable of a restricted range of light work—rather, the ALJ was clear that, besides Dr. Liu's opinion and her examination of the medical evidence, she partially credited Hamilton's own testimony regarding her limitations. *Riederer v. Comm'r of Soc. Sec.*, No. 1:19-CV-00242 EAW, 2020 WL 2833005, at *5 (W.D.N.Y. June 1, 2020).

Hamilton testified at the hearing that she experiences back pain that shoots down all the way to her leg.  Tr. 43.  She ranked the back pain at a seven, her flaring up hip pain at a ten, her constant hip pain at five to six, and her knee pain as an eight.  Tr. 44, 47-48, 52.  She testified that she cannot pick up anything heavy and that a laundry basket is "pretty much a lot of work" for her.  Tr. 44.  Cleaning her house requires taking breaks and can take up to a week.  Tr. 44.  Hamilton testified that she takes baths to help relieve the pain, uses heating pads and ice packs, and takes Suboxone.  Tr. 45.  She reported seeing her primary care doctor and pain management doctor.  Tr. 45.  She stated she "refused" surgeries and

14

specifically backed out of knee surgery.  Tr. 46, 49-50.  As to her COPD, Hamilton reported being able to walk "maybe a block" and she gets out of breath.  Tr. 53.  She testified she is trying to stop smoking, she cannot go clean anything dusty, and she uses inhalers and various medications to treat the COPD.  Tr. 53-55.  She reported using a cane almost all the time, having received a prescription for a cane from her primary care doctor.  Tr. 56-57.  Regarding her mental health, Hamilton described depressive episodes, anxiety, and panic attacks; she revealed she was considering seeing a counselor.  Tr. 57-61.  As for her daily living, Hamilton stated she did not have problems with taking a shower and putting on clothes generally.  Tr. 61-62.  She described cooking, with occasional need for a chair, and doing laundry with breaks.  Tr. 63.  She takes public transportation with a companion.  Tr. 64.

In her discussion, the ALJ gave partial credit to these statements regarding Hamilton's functional capabilities.  In her evaluation of all the evidence and Hamilton's testimony, the ALJ noted that there were "extremely limited positive clinical findings that support her allegations."  Tr. 24.  The ALJ discussed how certain portions of Hamilton's testimony—such as her claim she continued to receive pain management care—were contradicted by the record or lacked any supporting sources in the record.  Tr. 25.  The ALJ noted that attempts to secure additional records were fruitless.  Tr. 25.  The ALJ provided a thorough discussion of these inconsistencies and how they informed the assessment of Hamilton's symptoms.  Tr. 25-26.  Nevertheless, the ALJ gave Hamilton a "large degree of benefit of the doubt" in accounting for Hamilton's physical impairments, based on

her testimony and the limited clinical findings supporting her allegations.  Tr. 26-
27.

      Hamilton essentially argues that the ALJ was wrong to accept portions of her

testimony regarding her limitations, which were not covered in a medical source

opinion.  But this does not constitute reversible error.  *Baker*, 2018 WL 1173782, at

*3.  A claimant's testimony is acceptable evidence to support the inclusion of specific

options, such as a sit/stand option, in an RFC determination.  *Id.*  In assessing

Hamilton's RFC, the ALJ was permitted to "credit some of [Hamilton's] statements

while discrediting others," particularly in light of discrepancies between her

complaints and the medical record.  *Rodriguez*, 2020 WL 1316435, at *6; *Riederer*,

2020 WL 2833005, at *5.  Further, the ALJ "did not substitute her medical

judgment for any physician's evaluation," but, rather, "relied upon the substantial

medical records and the testimony to reach a reasoned determination of the

plaintiff's work capacity."  *O'Neil v. Colvin*, No. 13-CV-575-JTC, 2014 WL 5500662,

at *7 (W.D.N.Y. Oct. 30, 2014).[6]  The Second Circuit has indicated that an ALJ is

---

[6] The Court notes that some district courts have reached different conclusions
regarding an ALJ's RFC determination when there is an absence of medical
opinions given controlling or substantial weight.  *See, e.g., Zayas v Colvin*, No. 15-
CV-6312-FPG, 2016 WL 1761959, at * 4 (W.D.N.Y. May 2, 2016) (remand
warranted because the ALJ discounted the medical opinions assessing the
claimant's functional capacity, and thus erred by failing to obtain new opinions and
properly develop the record); *Fioretti v. Saul*, No. 19-CV-248-MJR, 2020 WL
3046097, at *3-5 (W.D.N.Y. June 8, 2020) (remand warranted because the ALJ did
not rely on any medical opinion evidence in the RFC determination, but instead
relied on his own lay opinion based on raw medical data).  This line of cases relies
on language that "an ALJ is not qualified to assess a claimant's RFC on the basis of
bare medical findings, and as a result an ALJ's determination of RFC without a
medical advisor's assessment is not supported by substantial evidence."  *Zayas,*

16

entitled to weigh all the evidence available to make an RFC finding that is consistent with the record as a whole—even if the conclusion does not perfectly correspond with any of the medical source opinions. *Matta*, 508 F. App'x at 56. Moreover, where an ALJ makes an RFC assessment that is "more restrictive than the medical opinions of record, it is generally not a basis for remand." *Beaman*, 2020 WL 473618, at *6 (citing *Baker*, 2018 WL 1173782, at *2).

This Court concludes the RFC assessment was supported by substantial evidence, and remand is not warranted.

---

3026 WL 1761959, at *4 (citing *Wilson v. Colvin*, No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015)). But, as this Court discussed, giving an opinion "limited weight" does not necessarily constitute a "rejection" of that opinion. Second, the regulations provide that the ALJ will "assess your residual functional capacity based on all the relevant evidence in your case record," which includes both expert medical opinions and "objective medical evidence"—namely, "medical signs, laboratory findings, or both." 20 C.F.R. §§ 416.945, 416.913; *see Dougherty-Noteboom v. Berryhill*, No. 17-CV-00243-HBS, 2018 WL 3866671, at *10 (W.D.N.Y. Aug. 15, 2018) ("Thus, the regulations contemplate that the ALJ may form the RFC, at least in part, by making determinations about the 'bare medical findings' independent of an expert medical opinion."). Each element of the RFC corresponds with Hamilton's subjective complaints or with an expert medical source statement. *See Dougherty-Noteboom*, 2018 WL 3866671, at *9. Thus, this Court concludes it is not error to assess a more restrictive RFC in this case, based on both opinion evidence and Hamilton's testimony. *See, e.g., Beckles*, 2019 WL 4140936, at *5 (finding the ALJ's RFC determination supported by medical opinion evidence, where the ALJ did not wholly reject the consultative examiner's opinion); *see also Rodriguez*, 2020 WL 1315435, at *4-6.

<u>CONCLUSION</u>

For the foregoing reasons, the Court DENIES Hamilton's motion for judgment on the pleadings (Dkt. 9) and GRANTS the Commissioner's motion for judgment on the pleadings (Dkt. 10).  The Clerk of Court is directed to enter judgment and close this case.


SO ORDERED.


Dated:      September 16, 2020
            Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE